RENDERED: MARCH 17, 2016
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000169-MR

JAMES L. SNEED, JR.                                                      APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                          CASE NO. 2014-CA-001786
BULLITT CIRCUIT COURT NO. 12-CR-00292

HON. RODNEY BURRESS, JUDGE                                    APPELLEES
BULLITT CIRCUIT COURT, ET AL.

## OPINION OF THE COURT BY JUSTICE CUNNINGHAM

### AFFIRMING

In 2012, Appellant, James L. Sneed, Jr., was indicted by the Bullitt

County grand jury and charged with first-degree rape, first-degree sodomy, and

first-degree incest. The alleged victim was Sneed's granddaughter, referred to

herein as Sarah.[1] The matter proceeded to trial on July 29, 2014. During her

opening statement, Sneed's attorney commented that Sarah's father—a

scheduled witness for the Commonwealth—used untruthfulness as a

mechanism for revenge. The Commonwealth objected and moved for a mistrial

on the basis that defense counsel-had characterized the witness as a liar.[2]

---

[1] A pseudonym is being used to protect her anonymity.

[2] This portion of defense counsel's opening statement has not been presented to
this Court. Therefore, it is unclear the extent to which defense counsel characterized
the witness as a liar.

After a lengthy and thorough discussion of relevant case law outside of the presence of the jury, the trial court denied the mistrial motion. The court then admonished the jury to disregard defense counsel's characterization of a particular witness as a liar and that only the jury can make credibility determinations. Sneed's attorney continued her opening statement, commenting as follows:

> The other way we can look back now and think to ourselves maybe this isn't very reliable is that in this counseling that [Sarah] has been involved in, that we've talked about, there are notes about [Sarah's] trouble with lying. This is a known issue.

The Commonwealth objected and again moved for a mistrial. After another lengthy discussion of the matter outside of the presence of the jury, the court granted the mistrial motion. The case was subsequently scheduled for retrial.

Sneed filed a Motion to Prohibit Retrial and Dismiss the Indictment. He argued that there was no manifest necessity for granting the mistrial and that retrial would violate his constitutional right to be free from double jeopardy. The trial court denied the motion to dismiss. Sneed filed a writ of prohibition with the Court of Appeals requesting an order prohibiting the trial court from retrying him. The Court of Appeals denied the writ and Sneed appealed to this Court. Having reviewed the facts and the law, we affirm the Court of Appeals' denial of the writ and remand this case to the trial court for retrial.

## Analysis

An appellate court has discretion to grant a writ where a trial court is proceeding within its jurisdiction upon a showing that the court is: 1) acting or is about to act erroneously; 2) there exists no adequate remedy by appeal or

2

otherwise, and 3) great injustice and irreparable injury will result if the petition is not granted. *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004). We review the Court of Appeals' determination under an abuse of discretion standard. *Sowders v. Lewis*, 241 S.W.3d 319, 322 (Ky. 2007).

The first issue to be addressed is whether a writ of prohibition is the appropriate form of relief in this case. We held in *St. Clair v. Roark* that "although double jeopardy is an appropriate subject for a writ of prohibition, it is not mandatory that it be addressed in that context." 10 S.W.3d 482, 485 (Ky. 2000). The Court continued as follows:

> The court in which the petition is filed may, in its discretion, address the merits of the issue within the context of the petition for the writ, or may decline to do so on grounds that there is an adequate remedy by appeal. Neither approach is mandatory and the exercise of discretion may well depend on the significance of the issue as framed by the facts of the particular case. Because of the importance of the issue raised by St. Clair, and because the issue is well framed by the facts of this case, the majority of this Court deems it appropriate to address the issue now rather than delay resolution until a possible appeal. *Id.*

Like in *St. Clair*, it is appropriate here to address the issue now rather than delay resolution.

Jeopardy attaches when the jury is impaneled and sworn. *Cardine v. Commonwealth*, 283 S.W.3d 641, 645-47 (Ky. 2009). It is undisputed that the jury was impaneled and sworn here. Once jeopardy attaches, *Cardine* instructs as follows:

> [the] prosecution of a defendant before a jury other than the original jury or contemporaneously-impaneled alternates is barred unless 1) there is a 'manifest necessity' for a mistrial or 2) the

3

defendant either requests or consents to a mistrial. *Id.* at 647 (citation omitted).

It is also undisputed that Sneed did not request or consent to the mistrial. Thus, retrial is barred unless there was manifest necessity for the mistrial.

When determining whether there was manifest necessity to declare a mistrial, we must consider whether the statements made by Sneed's attorney constitute "improper evidence which prejudice[d] the Commonwealth's right to a fair trial." *Grimes v. McAnulty,* 957 S.W.2d 223, 224 (Ky. 1997) (citations omitted). It is also critical to note that "a finding of manifest necessity is a matter left to the sound discretion of the trial court." *Commonwealth v. Scott,* 12 S.W.3d 682, 684 (Ky. 2000).

Sneed contends that his defense was that Sarah was lying and that the rules of evidence permit him to demonstrate Sarah's history of lying. Therefore, Sneed argues that by not allowing his counsel to comment on the credibility of a witness, the trial court denied him the right to present a defense. The contested comments made by Sneed's counsel in her opening statement referenced notes from Sarah's therapist concerning Sarah's alleged untruthfulness. These sealed records documented Sarah's treatment at Seven Counties Services. The issue of lying was noted in two separate documents detailing two separate treatment sessions. One of those reports indicates that Sarah's aunt expressed concern about Sarah's alleged untruthfulness regarding minor matters.

It is unclear whether the victim's aunt was scheduled to be called as character or fact witnesses for either party, or whether the therapist would

4

have qualified as an expert if called to testify. *See* KRE 405; KRE 702; and KRE 703. However, Sneed argues that the victim's "aunt and the therapist were under subpoena in the event that they were needed for impeachment." Sneed further asserts that "[n]o rules would have stopped defense counsel from asking Sarah if she had a history of lying about things as simple as what she had for breakfast." If Sarah denied this, Sneed contends that Sarah's "aunt or the therapist could have been called for purposes of impeachment."

Sneed specifically cites KRE 608(b) as a mechanism for introducing this evidence. However, KRE 608(b) "limits the attack . . . to cross-examination, meaning that the cross-examiner is bound by the witness's answer and is not authorized to contradict that answer by introduction of what the Rule calls 'extrinsic evidence.'" Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 4.25[4][c], at 319 (5th ed., 2013). Therefore, if Sarah denied any alleged specific instances of conduct relating to the information contained in the therapist's notes, then Sneed would not have been able to "impeach" Sarah by introducing testimony of the therapist or the aunt in order to contradict Sarah's answers.

It is also critical to note that "KRE 608(b) does not give parties a 'right' to cross-examine on specific acts found to be probative of truthfulness/untruthfulness . . . ." Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 4.25[4][e], at 320 (5th ed., 2013). Rather, introduction of specific acts evidence on cross-examination is at "the discretion of the [trial] court." *Id.* citing KRE 608(b). Therefore, it is unlikely that the court would

have even permitted Sarah to be cross-examined in such a manner under KRE 608(b). In other words, it would seem illogical for the court to admonish defense counsel's reference to the victim's history of lying during opening statements, only to allow the same or similar evidence to come in later under KRE 608(b). In any event, it would have been inadmissible to elicit testimony from the therapist or Sarah's aunt in order to contradict Sarah's testimony concerning her alleged history with lying. KRE 608(b).

And although it was not addressed by either party, introduction of the therapist's notes and testimony would have been barred by either the counselor-client privilege or the psychotherapist-patient privilege. KRE 506 and KRE 507. More precisely, that information would have been inadmissible unless Sneed satisfied at least one of the exceptions enumerated in either KRE 506(d) or KRE 507(c). *See also Commonwealth v. Barroso*, 122 S.W.3d 554 (Ky. 2003) (providing circumstances in which defendant's right to compulsory process must prevail over the witness's psychotherapist-patient privilege.). None of the KRE 507 exceptions apply here and the record does not indicate that a *Barroso* hearing was ever conducted. Also, there is no indication that the trial court considered, or was ever asked to consider, the exceptions presented in KRE 506(d). Thus, there was no way that this evidence could have been admissible at trial.

Because defense counsel's statements constituted improper evidence which prejudiced the Commonwealth's right to a fair trial, we cannot say that a mistrial was an inappropriate remedy here. *Grimes*, 957 S.W.2d at 224. As

6

previously noted, this determination was within the sound discretion of the trial court. *Scott*, 12 S.W.3d at 684.

And while it is well-settled that "[o]pening and closing statements are not evidence and wide latitude is allowed in both" *Wheeler v. Commonwealth*, 121 S.W.3d 173, 180 (Ky. 2003), the law is also clear that "[n]either expert nor lay witnesses may testify that another witness or a defendant is lying or faking." *Moss v. Commonwealth*, 949 S.W.2d 579, 583 (Ky. 1997) (citation omitted). This restriction applies to attorneys as well.

It is equally impermissible for an attorney to phrase her remarks so as to indicate that a witness is *lying based on the evidence presented*. Of course, pointing out inconsistencies in a witness's statements and other evidence—and drawing reasonable inferences therefrom—is entirely permissible to the extent that it otherwise comports with our rules of practice and procedure. However, counsel is not permitted to make affirmative conclusions as to the credibility of a witness. Determining witness credibility "is within the exclusive province of the jury." *Id.* (citation omitted).

It is also critical to consider the specific context in which defense counsel's impermissible statements were received by the jury here. The remarks by Sneed's attorney that triggered the Commonwealth's second mistrial motion occurred within minutes after the jury was admonished to disregard counsel's previous statement indicating that one of the Commonwealth's witnesses was lying. Prior to that admonition, defense counsel was instructed by the court not to comment on the truthfulness of any

7

witness and was specifically told not to use the word "lied" when referring to witnesses. Trial courts must be afforded wide latitude in controlling the discipline of their own court rooms and orderly trial proceedings. Declaring a mistrial is an extreme, but sometimes necessary measure available to the trial arbiter.

An additional factor weighing in favor of sustaining a mistrial is whether the defendant created the circumstances necessitating the mistrial. *United States v. Gantley*, 172 F.3d 422, 430 (6th Cir. 1999). In *Gantley*, the court held that there was manifest necessity for a mistrial where defendant, in direct violation of a court order, introduced evidence that he had taken a polygraph test which "obviously was to bolster his own testimony, to the prejudice of the government." *Id.* Similar to *Gantley*, defense counsel's disregard for the trial court's admonition in the present case created the circumstances necessitating a mistrial.

Furthermore, it is unlikely that a second admonition would have been effective under these circumstances. Defense counsel's disregard for the court's ruling likely confused the jury and certainly brought additional attention to the disputed matter.

An isolated or discrete statement erroneously impugning the credibility of witnesses may be considered harmless. *Cf. Meece v. Commonwealth*, 348 S.W.3d 627, 664-65 (Ky. 2011) (witness's testimony concerning defendant's experience with lying was held to be harmless error where defense was premised upon taped statements "having been successful lies, and considering

8

the other evidence produced . . . ."). In the context of the present case, however, defense counsel's statements concerning Sarah's history of lying were based on evidence that was inadmissible, highly prejudicial, and in direct contradiction to the court's previous admonition not to characterize any witness as a liar. This prejudiced the Commonwealth's right to a fundamentally fair trial and, thus, created the manifest necessity for a mistrial.

It is also necessary to briefly address the argument presented by the dissent. Notably, the dissent provides the relevant factual summaries of three cases, *Bartley*, *Parker*, and *Johnson*, in support of the contention that this Court routinely affirms the denial of mistrial motions raised by the defense. In each of these cases, however, we determined that the trial court's admonition was sufficient to cure the respective error. In contrast, Sneed's counsel directly defied a previous admonition, thus creating the circumstances in which a second admonition would not suffice.

Remiss from the dissent's analysis are three cases in which this Court has held that a mistrial was necessary in order to preserve the Commonwealth's right to a fair trial. *Grimes*, 957 S.W.2d at 224; *Chapman v. Richardson*, 740 S.W.2d 929 (Ky. 1987); and *Stacy v. Manis*, 709 S.W.2d 433, 434 (Ky. 1986). In *Chapman* and *Stacy*, the circumstances necessitating the mistrial were based on a single improper question posed by defense counsel to a prosecution witness. Although we clearly dispute the dissent's characterization of the contested statement by Sneed's counsel as a "run-of-the-mill routine misstep," there is nevertheless authority supporting the

9

proposition that a mistrial may be appropriate even when the error is based on a single improper question or statement posed by counsel. Of course, such determinations must be analyzed on a case-by-case basis.

Some trial judges may have handled the situation differently. But we cannot declare that the trial court here abused its discretion by granting the Commonwealth's motion for a mistrial, or that the Court of Appeals abused its discretion by denying the writ.

## Conclusion

For the foregoing reasons, we affirm the Court of Appeals' denial of the writ of prohibition and remand this case to the trial court for retrial.

All sitting. Minton, C.J.; Hughes, Keller, and Wright, JJ., concur. Hughes, J., concurs with separate opinion in which Minton, C.J., joins. Venters, J., dissents by separate opinion in which Noble, J., joins.

HUGHES, J., CONCURRING: I agree completely with the Court's conclusion that the declaration of a mistrial in this case was not an abuse of the trial court's discretion. I write separately in hopes that a fuller account of the trial court's proceedings and this Court's standard of review will serve as a response to the concerns raised by the dissent.

## RELEVANT FACTS

Near the outset of her opening statement, counsel for Sneed explained to the jury that the defendant denied the sex-offense allegations that had been leveled against him and contended that the alleged victim, the defendant's granddaughter, had fabricated them. Counsel acknowledged that that was a

10

contention the jury would not, and should not, entertain lightly. The granddaughter had alleged serious crimes, and the jury would rightly be reluctant to believe that someone might lie about something so grave. Nevertheless, defense counsel continued, evidence along several different fronts would show that in this case there was plenty of reason to doubt the veracity of the granddaughter's accusations. Counsel then proceeded to outline the different types of evidence which, she asserted, would give the jury pause.

First, counsel promised evidence tending to show that the victim's father, Jimmy (the defendant's son), was an inveterate liar and manipulator ("Jimmy used lying as a way to retaliate against people. He did it against James [the victim's grandfather]."). That was important, counsel said, for a couple of reasons, one general and one more specific. The general reason was that the father, by example, had passed his penchant for deceit and manipulation on to his daughter ("She learned that that was a way to get back at people."), who was also a liar and manipulator. And, more specifically, the granddaughter's present accusations illustrated both her and her father's tendencies. She accused her grandfather, counsel said, at a time when she was mad at her grandfather for interfering in her relationship with an older boy. It was also at a time, counsel said, when the father was feuding with the grandfather, and he, the father, had manipulated his daughter into siding with him in the feud.

Another sort of evidence also suggesting false accusations, counsel continued, was evidence tending to show that the granddaughter's accusations had changed over time. She had given a number of statements to different

11

investigators, and those statements included, according to counsel, significant discrepancies. One such discrepancy concerned the granddaughter's statement to one investigator that the sexual assaults had been preceded by the defendant's forcing upon the victim white, prescription pills which had put her to sleep.

At that point the Commonwealth objected. From the ensuing bench conference (which expanded into a sort of hearing when the jury was excused), it appears that prior to trial the Commonwealth had sought clearance under Kentucky Rule of Evidence (KRE) 404(c) to introduce evidence concerning the pills, but at the hearing on the Commonwealth's motion the granddaughter testified and essentially recanted her prior statement. She acknowledged that her grandfather had occasionally given her white pills, but only, she testified at the KRE 404 hearing, at her request when she had a headache, and never as a prelude to any sort of sexual contact. In light of that testimony, the trial court had denied the Commonwealth's motion for leave to introduce pill evidence prior to trial, ruling all such evidence irrelevant. Defense counsel's reference to the pills, the Commonwealth now complained, violated that pretrial ruling.

Defense counsel responded by pointing out that she was not interested in the pill evidence as such, but rather in the granddaughter's glaringly inconsistent statements to the investigator and to the court. After considerable discussion, the court agreed with defense counsel that the inconsistent statements were relevant to the defense and overruled the Commonwealth's objection.

12

Before recalling the jury and allowing defense counsel to continue with her opening, the court gave the parties a brief recess. When the record resumes, the jury is still absent and the Commonwealth is renewing its objection to any reference to the pills, but this time is moving for a mistrial on the ground not only that defense counsel's reference to the pills was a blatant violation of a prior evidentiary ruling, but also on the ground that defense counsel's earlier remarks about the victim's father, remarks characterizing him as a liar, ran afoul of a general rule against that sort of witness characterization.

The court gave the parties thirty minutes to look for pertinent authority on this latter issue, and when the hearing recommenced the Commonwealth referred the court to *Moss v. Commonwealth*, 949 S.W.2d 579 (Ky. 1997), for the proposition that no witness, expert or otherwise, should be asked to characterize the testimony of another witness as a lie or lying. Although acknowledging that *Moss* did not apply directly to the present situation, the court agreed with the Commonwealth that *Moss's* general solicitude for the jury's role as credibility determiner was pertinent, and that defense counsel's opening statement references to key prosecution witnesses as liars were at odds with that fundamental principle. The trial court also referred to KRE 608, the rule governing evidence about a witness's character for truthfulness, and expressed concern that defense counsel's characterizations were not consonant with the limitations that rule imposes on how and when a witness's character for truthfulness can be attacked.

13

The court thus agreed with the Commonwealth that defense counsel's references to the victim's father as a liar were improper. It did not agree, however, that a mistrial was the appropriate remedy. The Commonwealth argued in effect that by characterizing them as "liars" defense counsel had tainted beyond recall the victim's and the victim's father's characters for truthfulness such that the jury could not be relied upon to give their testimonies a fair hearing. The trial court rejected that argument. Reading from *Cardine v. Commonwealth*, 283 S.W.3d 641 (Ky. 2009), concerning the standard for granting and the potential double jeopardy consequences of mistrials, the court ruled that the Commonwealth's interest in a jury not improperly biased against its witnesses could, at that point at least, be adequately protected by an admonition. Accordingly, once the jury had reassembled, the court admonished it as follows: "Statements made by counsel that a particular witness is a liar are to be disregarded. The credibility of any and all witnesses during the course of trial is within the exclusive province of the jury and is for you to decide."

The jury thus advised, defense counsel resumed her opening. She briefly recalled her earlier remarks about the granddaughter's inconsistent statements concerning the present allegations, and then asserted that yet a third sort of evidence cast doubt on the granddaughter's veracity. This evidence, counsel said, included notes compiled by the girl's counselor during or soon after therapy sessions, notes that, defense counsel continued, made reference to the

14

fact that the granddaughter's "issues with lying" had emerged as a concern in therapy.

The Commonwealth promptly objected and renewed its motion for a mistrial. The counselor's notes were inadmissible hearsay, the Commonwealth argued, and so could not be referred to during opening statement. Even more importantly, the reference to the granddaughter as, in essence, "a liar" was grossly improper in light of the admonition the court had given the jury not five minutes before.

The court allowed defense counsel to respond. She maintained that hearsay was not an issue because the counselor would testify. She further maintained that a counselor's characterization of a person as having "issues with lying" was not the same as characterizing the person as "a liar," which is what she had understood the court to have forbidden. She also objected to a mistrial and offered her view that such a ruling would bar further prosecution.

The court did not this time ask for more research and it did not rehash the mistrial standards it had noted just a few minutes earlier. It observed that defense counsel's characterization of the victim as one who, in the eyes of her counselor, had "issues with lying" raised the same sort of *Moss* and KRE 608 concerns as the earlier characterization of the victim's father as "a liar." *Moss* deplored, the court noted, the characterization of another witness's testimony as lying, even characterizations by experts. The court did not expressly rule that an admonition could no longer assure the Commonwealth an unbiased jury, but given the court's clear awareness of the mistrial standard and its

15

prior decision to admonish, that is a fair interpretation of its decision not to give a second admonition. The court instead declared a mistrial.

Sneed contends that by declaring a mistrial the trial court erred in either of two ways. Either there were *no* grounds for a mistrial, because there was nothing improper about defense counsel's opening statement, or, even if there was some impropriety, counsel's opening statement did not provide *adequate* grounds for a mistrial because the presumed impropriety would have proved harmless: regardless of counsel's statements the evidence at trial would eventually have made the same points.[3]

The dissent raises similar concerns. It, too, finds nothing particularly objectionable in defense counsel's riding roughshod over the rules governing not only what evidence is admissible, but how and when certain types of evidence may be admitted. That is not the dissent's main concern, however. Rather, even if defense counsel did exceed somehow the bounds of a proper opening statement, the dissent maintains that the trial court misapplied the standard for granting a mistrial, and that error, the dissent maintains, if this Court is to be consistent with other mistrial rulings, implicates the double

---

[3] Sneed thus would require trial courts to adopt the wait-and-see approach the trial court employed in *Lickliter v. Commonwealth,* 249 Ky. 95, 60 S.W.2d 355 (1933), whenever counsel refers in his or her opening to evidence that *might* become admissible—as impeachment or rebuttal evidence, say—depending on the course of trial. Neither Sneed nor the Commonwealth develops this idea, however, and so the Court correctly does not address it. Tying the trial court's hands in that way seems a bad idea to me, one at odds with what is supposed to be a genuine discretion in the trial court, but in any event such a rule would not apply in cases like this one, where counsel did not simply identify potentially admissible evidence, but rather used merely potential (and highly dubious) evidence to infer and argue—activities appropriate to closing argument, but not appropriate to opening statements.

16

jeopardy clauses of the federal and state constitutions so as to bar Sneed's further prosecution. It is this latter concern of the dissent that I want in particular to address, as it seems to me to misconceive our standard of review. Before turning to that question, I will briefly address and second the majority Opinion's conclusion that defense counsel's opening was indeed improper.

## DISCUSSION

### I. Defense Counsel Exceeded the Proper Bounds of Opening Statement.

In establishing the order of proceedings at a criminal trial, Kentucky Rule of Criminal Procedure (RCr) 9.42 provides that once the jury has been sworn "(a) The Attorney for the Commonwealth shall state to the jury the nature of the charge and the evidence upon which the Commonwealth relies to support it; (b) The defendant or the defendant's attorney may state the defense and the evidence upon which the defendant relies to support it or the defendant may reserve opening statement until the conclusion of the evidence for the Commonwealth." Referring to the prosecutor's role under part (a) of this rule, this Court has observed that "'the only legitimate purpose of an opening statement is so to explain to the jury the issue they are to try that they may understand the bearing of the evidence to be introduced.' . . . Further, 'it is never proper in an opening statement for counsel to argue the case or to give his personal opinions or inferences from the facts he expects to prove.'" *Kiper v. Commonwealth,* 399 S.W.3d 736, 748 (Ky. 2012) (citations omitted). The Court has held that under the rule, a prosecutor's use of inadmissible evidence

17

regarding a disputed fact during his opening statement is improper. *Fields v. Commonwealth*, 12 S.W.3d 275 (Ky. 2000).

Although the Court appears never expressly to have held that the rule imposes like restrictions on opening statements by the defense, I concur in the majority's apparent presumption that it does. *Cf.* Supreme Court Rule (SCR) 3.130-3.4(e) ("A lawyer shall not . . . in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused.").[4] Under these rules, the opening statement by either side is limited to outlining what counsel in good faith expects to prove or support by evidence that is available, relevant, and admissible.

---

[4] *And see, Arizona v. Washington*, 434 U.S. 497 (1978) (upholding grant of mistrial based on defense counsel's references during opening statement to the fact that the defendant's prior conviction had been reversed on the ground that the prosecutor had violated *Brady v Maryland*, 373 U.S. 83 (1963)); *Simmons v. State*, 57 A.3d 541 (Md. Ct. Spc. App. 2012) (upholding grant of mistrial based on defense counsel's disclosure during opening statement that the defendant had offered to take a lie detector test); *United States v. Shaw*, 829 F.2d 714 (9th Cir. 1987) (upholding grant of mistrial based on defense counsel's opening statement anticipating testimony by a witness who had already indicated that she would invoke the Fifth Amendment); *Pavey v. State*, 764 N.E.2d 692 (Ind. App. 2002) (upholding grant of mistrial based on defense counsel's opening statement to the effect that a key prosecution witness had been "bought and paid for" by plea agreement with the State); *Commonwealth v. Murray*, 496 N.E.2d 179 (Mass. App. 1986) (upholding grant of mistrial based on defense counsel's references during opening statement to prejudicial evidence some of which was irrelevant and some was not supported by counsel's good-faith belief in its existence); *but see United States v. Sloan*, 36 F.3d 386 (4th Cir. 1994) (holding that defendant's decision not to testify did not necessitate a mistrial notwithstanding defense counsel's limited anticipation of that testimony during opening statement).

18

As the majority opinion notes, defense counsel's characterization during her opening statement of the victim and her father as "liars" ran afoul of those rules because under *Moss* no witness at trial would have been allowed to characterize the victim's or her father's testimony as "a lie," and under KRE 608 no witness would have been allowed to characterize the victim herself or her father as "a liar." To be sure, depending on the impeachment evidence ultimately introduced, it may have been a tolerable tactic for defense counsel to label the victim and/or her father as "liars" during closing argument, but that disparagement was improper during opening. It was plainly intended, furthermore, to create a presumption in the jury, prior to any testimony, against the Commonwealth's key witnesses, and as such the trial court was well within its discretion when it admonished the jury not to make that presumption.

As the majority opinion also notes, defense counsel's reference, on the heels of the trial court's admonition, to notes by the victim's Seven Counties Services counselor to the effect that the victim had "issues with lying," was improper for a number of reasons. As with any other witness, the counselor would never have been allowed to characterize the victim's testimony as a lie or the victim as a liar. If Sneed's claim is that the victim's "issue[] with lying" is something different from the character issue addressed by KRE 608, then questions of expertise under KRE 702 and 703 must be addressed. The counselor's notes, moreover, were not only hearsay but were subject to KRE 506, the counselor-client privilege. Under that rule, "a client has a privilege to

19

refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of counseling the client, between himself, his counselor, and persons present at the direction of the counselor, including members of the client's family." KRE 506(b). All of these rules, of course, allow for the admission of otherwise inadmissible evidence under certain circumstances. *See, e.g.,* KRE 506(d), exceptions to the counselor-client privilege; *Cf., e.g., Commonwealth, v. Barroso,* 122 S.W.3d 554 (Ky. 2003) (discussing the limited admissibility of evidence subject to KRE 507, the psychotherapist-patient privilege). However, the burden of establishing the exception is unquestionably on the proponent of the evidence, and that burden includes raising the issue in a timely manner. I concur fully in the majority opinion's conclusion that defense counsel's reference to the victim's counselor's notes without having secured a ruling on their admissibility was highly improper, and the impropriety was only compounded by the fact that the notes referred to the victim's "issues with lying." Here again, defense counsel's purpose, plainly, was to prejudice the jury against the victim prior to her testimony, and the question thus becomes did that impropriety and the immediately preceding one "manifestly necessitate" a mistrial. They clearly did.

## II. The Trial Court Did Not Abuse Its Discretion By Declaring a Mistrial.

Actually, the manifest need for a mistrial is not exactly the question before us. That was the question that confronted the trial court, which, as noted above, initially denied the Commonwealth's motion for a mistrial, but granted its subsequent motion when defense counsel persisted in her

20

premature and improper efforts to impugn the veracity of key prosecution witnesses. The precise question before this Court, however, is not whether defense counsel's improper opening statement manifestly necessitated a mistrial, but rather whether the trial court abused its discretion in deciding that it did. *Cardine v. Commonwealth*, 283 S.W.3d at 641. The United States Supreme Court addressed these related but distinct questions in *Arizona v. Washington, 434 U.S. at 497,* which, like this case, involved the declaration of a mistrial following what the state trial court deemed unduly prejudicial comments by defense counsel during his opening statement.

As the majority Opinion explains, under the Double Jeopardy clauses of both the federal and our Kentucky constitutions, when a mistrial has been declared, retrial of the defendant is not allowed unless the defendant consented to the mistrial, *Cardine,* 283 S.W.3d at 647 (citing *United States v. Dinitz,* 424 U.S. 600 (1976), or unless the mistrial was compelled by "manifest necessity." *Cardine,* 283 S.W.3d at 647; *Arizona v. Washington,* 434 U.S. at 505-06 (citing *United States v. Perez,* 22 U.S. 579, 9 Wheat. 579, 580 (1824)). In *Washington,* the United States District Court and the Court of Appeals for the Ninth Circuit agreed that the mistrial had been entered over the defendant's objection and in the absence of "manifest necessity," and so granted and upheld, respectively, the defendant's petition for and award of habeas corpus relief. Reversing, the Supreme Court explained that the Court of Appeals had "applied an inappropriate standard of review to mistrial rulings of this kind." 434 U.S. at 503.

21

The Supreme Court acknowledged the appropriateness of the "manifest necessity" standard as a guide to trial courts confronted, in a variety of cases, with requests for mistrials. "Nevertheless," the Court observed,

> those words ["manifest necessity"] do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. Indeed, it is manifest that the key word "necessity" cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a "high degree" before concluding that a mistrial is appropriate. The question whether that "high degree" has been reached is answered more easily in some kinds of cases than in others.

434 U.S. at 506-07 (footnotes omitted).

Thus, the Court explained, the degree of appellate scrutiny given to a trial judge's finding of manifest necessity will vary depending on the underlying facts. At one end of the spectrum, a trial judge's finding of manifest necessity is entitled to the "highest degree of respect" when juror bias or a hung jury is involved. 434 U.S. at 510-11. At the other end of the spectrum, the "strictest" appellate scrutiny is appropriate when the finding of manifest necessity is premised on "the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." 434 U.S. at 508 (footnotes omitted).

With respect to cases, such as *Washington,* in which potential jury bias was the problem confronting the trial court, the Court recognized that

> the extent of the possible bias cannot be measured, and that the [federal] District Court was quite correct in believing that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions. In a strict,

22

literal sense, the mistrial was not "necessary." Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by [defense counsel's] improper comment. . . . An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal. Indeed, such statements create a risk, often not present in the individual juror bias situation, that the entire panel may be tainted. The trial judge, of course, may instruct the jury to disregard the improper comment. In extreme cases, he may discipline counsel, or even remove him from the trial as he did in *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267. Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument. Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred. The adoption of a stringent standard of appellate review in this area, therefore, would seriously impede the trial judge in the proper performance of his "duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop . . . professional misconduct." *Id.,* at 612, 96 S. Ct., at 1082.

434 U.S. at 511-13 (citations and footnotes omitted).

To be sure, even in the hung jury and biased jury contexts, where trial court mistrial decisions are due considerable deference, "reviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story [in *United States v. Perez, supra*], the trial judge exercised 'sound discretion' in declaring a mistrial." 434 U.S. at 514. This is not, however, a backdoor invitation to the reviewing court to substitute its "manifest necessity" opinion for that of the trial court. The reviewing court, rather, is to satisfy itself, "by close examination of the record," *United States v. Sloan,* 36 F.3d at 400, that

23

the trial court did not act precipitately, but evinced an appropriate concern for the possible double jeopardy consequences of an erroneous ruling; gave both the defense counsel and the prosecutor a full opportunity to explain their positions; and made a ruling neither irrational nor irresponsible in light of the particular facts. *Washington,* 434 U.S. at 514-15.

An examination of the full record in this case makes it clear that the trial court exercised a sound discretion. Its mistrial ruling was both well informed and duly deliberate. Indeed, its reading of pertinent passages from *Cardine* on the record makes it abundantly clear that it was aware of the mistrial standard and of the important constitutional interests at stake. The trial court's initial denial of the Commonwealth's motion and its opting instead for an admonition makes it equally clear that it was aware of and considered alternatives to a mistrial. It twice gave both parties a full opportunity to explain their positions. Its ultimate decision to abort the trial came only after defense counsel ventured again to paint a witness as a liar, this time by reference to privileged counselor notes which were inadmissible absent a court ruling that they were admissible. While some judges might have decided differently, this ruling can hardly be deemed irrational or irresponsible. Defense counsel's persistent attempts—in the face of an admonition—to bias the jury against the Commonwealth's key witnesses before their testimonies and the introduction of any evidence, gave the court reasonable grounds to conclude that the Commonwealth's right to a fair trial had been compromised. A second admonition, the court could reasonably have concluded, was apt not to be effective, and, indeed, could have

24

affected the *defendant's* right to a fair trial by casting defense counsel in an unfavorable light.

## **CONCLUSION**

In sum, I concur fully in the majority's conclusion that the declaration of a mistrial in this case was not an abuse of discretion. The dissent's contrary position rests, it appears, on a cursory review of the record and a failure to distinguish the different roles, as emphasized by the United States Supreme Court in *Washington,* of trial and appellate courts.

Minton, C.J., joins.

VENTERS, J., DISSENTS: I respectfully dissent. On countless occasions, this Court has steadfastly held that "a mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity." *Dunlap v. Commonwealth,* 435 S.W.3d 537, 604 (Ky. 2013), *as modified* (Feb. 20, 2014).[5] We have instructed the trial courts that their discretion to order a mistrial "is

---

[5] *Mayse v. Commonwealth,* 422 S.W.3d 223, 229 (Ky. 2013), *as modified on denial of reh'g* (Mar. 20, 2014); *Doneghy v. Commonwealth,* 410 S.W.3d 95, 107 (Ky. 2013); *Brown v. Commonwealth,* 416 S.W.3d 302, 312 (Ky. 2013); *Oro-Jimenez v. Commonwealth,* 412 S.W.3d 174, 181 (Ky. 2013); *Baumia v. Commonwealth,* 402 S.W.3d 530, 541 (Ky. 2013); *Slone v. Commonwealth,* 382 S.W.3d 851, 858 (Ky. 2012); *York v. Commonwealth,* 353 S.W.3d 603, 607 (Ky. 2011); *Parker v. Commonwealth,* 291 S.W.3d 647, 658 (Ky. 2009); *Olson v. Commonwealth,* 2005-SC-000592-MR, 2008 WL 746651 at *7 (Ky. Mar. 20, 2008), *as modified on denial of reh'g* (Aug. 21, 2008)(unpublished); *Matthews v. Commonwealth,* 163 S.W.3d 11, 17 (Ky. 2005), *as modified* (Aug. 25, 2005); *Dawson v. Commonwealth,* 2003-SC-0363-MR, 2005 WL 1412522 at *3 (Ky. June 16, 2005)(unpublished); *Bray v. Commonwealth,* 177 S.W.3d 741, 752 (Ky. 2005), *overruled on other grounds by Padgett v. Commonwealth,* 312 S.W.3d 336 (Ky. 2010); *Woodard v. Commonwealth,* 147 S.W.3d 63, 68 (Ky. 2004); *Commonwealth v. Scott,* 12 S.W.3d 682, 684 (Ky. 2000). *Skaggs v. Commonwealth,* 694 S.W.2d 672, 678 (Ky. 1985); and others too numerous to list.

to be used sparingly and only with the utmost caution, under urgent circumstances, and for very plain and obvious causes." *Commonwealth v. Scott*, 12 S.W.3d 682, 685 (Ky. 2000). We said in *Parker v. Commonwealth*, that a trial court should declare a mistrial "only when there is a fundamental defect in the proceedings." 291 S.W.3d 647, 658 (Ky. 2009). We said in *Brown v. Commonwealth* that a trial court should declare a mistrial only when "the error is 'of such magnitude that a litigant would be denied a fair and impartial trial, and the prejudicial effect could be removed in no other way.'" 416 S.W.3d 302, 312 (Ky. 2013) (citation omitted).

In conjunction with the foregoing principles, we have consistently held that a mistrial is improper when the taint of improper information going to the jury can be cured with an admonition. *Matthews v. Commonwealth*, 163 S.W.3d 11, 17 (Ky. 2005). In fact, so strong is our faith in the efficacy of an admonition to cure the taint of improper evidence that we allow for *only two* circumstances in which an admonition will be deemed to be an insufficient cure: 1) when there is "an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant;" *or* 2) "when the improper question was asked [or other improper information imported] without a factual basis *and* was inflammatory or highly prejudicial." *Bartley v. Commonwealth*, 400 S.W.3d 714, 735 (Ky. 2013); *Parker*, 291 S.W.3d at 658; *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003). Consider the following recent examples in which, despite obviously improper and

26

seriously prejudicial evidence, we held that a mistrial was properly denied because the taint could be cured by an admonition.

In *Bartley*, a trial witness's "disturbing" suggestion that the defendant inflicted numerous cigarette burns on her severely disabled child was readily cured by an admonition to the jury "not to consider" the witness's improper cigarette-burn testimony. 400 S.W.3d 714, 735-36.

In *Parker*, a witness's improper and highly prejudicial testimony that he feared he would be killed for testifying against the defendant was cured by the judge's admonishment of the jury "to disregard the last question and answer." 291 S.W.3d at 657.

In *Johnson*, the prosecutor's improper questioning of a witness about the defendant's prior criminal conviction did not warrant a mistrial because the prejudice was cured by the trial judge's admonition to the jury to "disregard that particular question and the fact that Mr. Johnson may have pled guilty to any offense at any other time." 105 S.W.3d at 440-41.

In *Olson v. Commonwealth*, the prosecutor told the jury in his opening statement that witnesses would testify that the defendant admitted her role in the murder. The evidence to support that highly incriminating remark was never presented. Not only did we conclude that a mistrial was properly denied, we went so far as to say that the defendant herself could have "removed or mitigated [the prejudicial effect] through [her] closing argument, by pointing out that the Commonwealth failed to produce evidence promised in its opening

statement." 2005-SC-000592-MR, 2008 WL 746651 at *7 (Ky. Mar. 20, 2008), *as modified on denial of reh'g* (Aug. 21, 2008).

The law could not be clearer: a mistrial is an "extreme remedy" to be granted with "utmost caution" only as a "manifest necessity" when a "fundamental defect in the proceedings" presents an "urgent or real necessity." When improper information is heard by the jury, a mistrial is acceptable *only* if there is an overwhelming probability that the jury will be unable to follow the court's admonition and a strong likelihood that the effect of the inadmissible evidence would be devastating; or if the information presented lacked a factual basis and was inflammatory or highly prejudicial.

Significantly, in its brief to this Court, the Commonwealth does not attempt to explain how defense counsel's comment could be "of such magnitude that a litigant would be denied a fair and impartial trial and the prejudicial effect could be removed in no other way"[6] but a mistrial. The Commonwealth says that "defense counsel's blatant disregard for the trial court's ruling is what necessitated the granting of the mistrial." Yet, we have never held that violating a court ruling alone is grounds for a mistrial. Certainly, a serious prejudicial effect arising out of such conduct could compel a mistrial, but it is the effect that must meet the mistrial standard, not the audacity of the perpetrator's defiance. The Commonwealth does not explain or describe any prejudice caused to its case by the defense counsel's conduct; and neither does the Court of Appeals.

---

[6] *Brown*, 416 S.W.3d at 312.

28

The Court of Appeals says that the "repeated disregard of the trial court's ruling by Sneed's counsel created the need for the trial court to declare a mistrial." Based on our well-established standards, there cannot be a *"need for the trial court to declare a mistrial"* unless there is an "error [] of such magnitude that a litigant would be denied a fair and impartial trial and the prejudicial effect could be removed in no other way." *Id.* Neither the majority opinion, the separate concurring opinion, nor the Court of Appeals opinion explain how the Commonwealth would be denied a fair and impartial trial by defense counsel's conduct or what "prejudicial effect" was created that could only be cured by a mistrial.

I fully understand that, as a court of appellate review, we do not substitute our discretion for that of the trial court. We defer to the trial court's discretion to determine if, based upon the exacting standards we set, a mistrial is a manifest necessity. But, to exercise its discretion, a trial court is obliged to use the standards we set. A discretionary decision that fails to apply the applicable standard of law is a decision that is "unsupported by sound legal principles," and thus, is an abuse of discretion. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). In other words, a mistrial declared without any articulable connection to the governing rule of law is unsupported by "sound legal principles," and is, therefore, an abuse of discretion.

I do not suggest that this well-respected and experienced trial judge does not know the standard for declaring a mistrial; I simply point out that he did not apply the standard for declaring a mistrial and made no findings to indicate

29

the proper standard was applied. In neither the oral ruling from the bench, nor the written order that later memorialized the declaration of the mistrial, did the trial court indicate how such prejudice was inflicted upon the Commonwealth's case that it could not be cured by another admonition. The trial court offered no explanation for the manifest necessity of a mistrial.

The prosecutor also did not explain the *necessity* for a mistrial. The only justification expressed for declaring a mistrial was that defense counsel made an improper comment during the opening statement. In my view, especially in the wake of *Olson*, how such a run-of-the-mill misstep in an opening statement becomes "an error of such magnitude that a litigant would be denied a fair and impartial trial and the prejudicial effect could be removed in no other way" is a mystery that requires an explanation.

The harsh ramifications in this case of a decision of this Court adverse to the Commonwealth is manifest. But the constitutional implication of declaring a mistrial was also obvious and it was squarely presented in the trial court before the mistrial was declared. It is no accident that a mistrial is an "extreme remedy" justifiable *only* when it is manifestly necessary to cure a "fundamental defect" that can be fairly addressed no other way. A mistrial in a criminal case comes at the expense of the defendant's Constitutional right to protection against double jeopardy. Consequently, we allow the forfeiture of that right only when no other option is available to avoid injustice. That is why we have the long litany of cases emphasizing the extraordinary requirements for granting a mistrial.

30

Over the years, we have dismissed as harmless error scores of similar offensive statements by attorneys in both criminal and civil cases because we could see no perceptible effect at all on the outcomes of the cases. The majority opinion casts many of those decisions in doubt. We can now expect that in scores of future cases criminal defendants in cases like *Parker*, *Johnson*, *Bartley*, and *Olsen* will remind us how a lawyer's opening statement claiming that a witness will lie, or is a liar, is now "a fundamental defect in the proceeding" requiring reversal.

I will not debate with the majority (and separate concurrence) over the admissibility of evidence alluded to in defense counsel's opening statement. The majority and separate concurrence postulate various reasons for its inadmissibility that were not raised, addressed, or decided in trial court or the Court of Appeals, and thus had no effect on whether a mistrial was necessary. It suffices to say that the only basis utilized by the trial court and the Court of Appeals as justification for a mistrial was their perceived violation of the rule we set forth in *Moss v. Commonwealth*, 949 S.W.2d 579, 583 (Ky. 1997).

The trial court based the declaration of a mistrial upon this statement from *Moss*: "[I]t is improper to require a witness to comment on the credibility of another witness. A witness's opinion about the truth of the testimony of another witness is not permitted." The trial court expressly quoted the excerpt in *Moss* taken from the Supreme Court of Rhode Island in *State v. James*, 557 A.2d 471, 473 (R.I. 1989): "Neither expert nor lay witnesses may testify that

31

another witness or a defendant is lying or faking. That determination is within the exclusive province of the jury."

However, *Moss* does not apply here. *Moss* prohibits questions that ask one witness "to characterize the testimony of another witness . . . as lying." 949 S.W.2d at 583. The basis for the rule stated in *Moss* is that a witness's opinion about the truth of the testimony of another witness is not relevant to the jury's determination. Nothing in *Moss*, or in any other case that I know of, prohibits a lawyer in his opening statement from telling the jury that the evidence will show that an adversarial witness will be lying.

We may quibble about the use of such indelicate terms as "liar," and certainly within some reasonable limits the trial court can preserve the decorum of the courtroom by moderating the tolerable range of offensive discourse. But *Moss* does not apply to the circumstances of this case and cannot in this instance form the basis of prejudicial error compelling a mistrial.

For the foregoing reasons, I respectfully dissent.

Noble, J., joins.

COUNSEL FOR APPELLANT:

Julie Marie Kaelin


APPELLEE:

Hon. Rodney Burress
Judge, Bullitt Circuit Court


COUNSEL FOR COMMONWEALTH OF KENTUCKY, REAL PARTY IN
INTEREST:

Andy Beshear
Attorney General of Kentucky

William Robert Long, Jr.
Assistant Attorney General


COUNSEL FOR AMICUS CURIAE KENTUCKY ASSOCIATION OF CRIMINAL
DEFENSE LAWYERS:

William G. Deatherage, Jr.