# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 25, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0445-MR

MARCELLUS PHAGAN                            APPELLANT

                 ON APPEAL FROM MCCRACKEN CIRCUIT COURT
V.                HONORABLE TIMOTHY KALTENBACH, JUDGE
                         NO. 18-CR-00109

COMMONWEALTH OF KENTUCKY                APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Marcellus Phagan appeals as a matter of right from the judgment of the McCracken Circuit Court sentencing him to a term of twenty years' imprisonment following his conviction at a jury trial on rape and sodomy, both in the second degree. After a careful review, we affirm.

In 2016 Phagan resided in a trailer in Paducah with his girlfriend, Modesty Nunn, their infant son, and Nunn's thirteen-year-old goddaughter, Ashley.[1] Ashley testified that one night in mid-July, she was talking on her cell phone using the speaker function while she showered. During the conversation she received a text message telling her to get off the phone while

---

[1] To protect the child's privacy, she will be referred to using a pseudonym.

she was showering. Ashley believed the message came from Phagan. She stored his number in her phone under the name "Mac" with a moneybag emoji beside the name. After her shower, Ashley went to the living room and began playing a video game while Phagan sat on the couch.

Phagan offered to help Ashley with the game when he noticed she was struggling. After playing together for a time, Phagan pushed Ashley's head toward his penis and she performed oral sex on him. He did not ejaculate but made Ashley promise to tell no one about the event. The pair then went to Ashley's room where Phagan told her to undress and they engaged in sexual intercourse. Phagan did not wear a condom and ejaculated on the bed. Ashley stated she and Phagan had sex in her bedroom again on August 8, 2016, and she performed oral sex on him in a car outside a barbershop in November 2017.

On December 20, 2017, Ashley told her mother, Santana Reed, about the sexual encounters with Phagan. Reed contacted the McCracken County Sheriff's Office to report the crimes. Ashley told the responding deputy Nunn was not home when the sexual acts occurred. She later testified this was untrue, but she told the officer that to keep Nunn from being in trouble. Ashley also reported to the deputy she and Phagan never called or texted one another.

Detective Sarah Martin later interviewed Ashley. During the interview, Ashley showed Det. Martin a text thread between herself and "Mac" from October 29, 2017, which alluded to a relationship between the pair as well as a

request from him for sex.  Det. Martin took photographs of the text messages as well as the contact information stored for "Mac."  She confirmed with Ashley and Nunn that the phone number belonged to Phagan.  She also entered the phone number in the search bar on Facebook and concluded the number belonged to Phagan.

Following the interview with Ashley, Det. Martin, accompanied by Captain Ryan Norman and Captain Jesse Riddle, interviewed Phagan at the Sheriff's Department in Johnson County, Illinois.  The interview was not recorded[2] nor was there documentation of any waiver by Phagan of his *Miranda* rights, but a report of the interview was completed the same day.  Det. Martin testified Captain Norman read Phagan his rights and he agreed to speak with the officers, a point confirmed in later testimony by both Captains Riddle and Norman.  Phagan denied the allegations several times before admitting the oral sex and sexual intercourse did happen on the same day as back-to-back occurrences.  He stated Ashley came on to him while he was sitting on the couch and, although he knew it was wrong and he felt badly about it, he went forward with the sexual contact.

At trial, Phagan testified in his own defense.  He admitted some people called him "Mac."  He generally denied having any sexual contact with Ashley, denied sending her any text messages, and denied making any admissions to

---

[2] Det. Martin testified she believed Illinois laws prohibited recording interviews without first obtaining consent from the interviewee.  For reasons unestablished in the record, Det. Martin chose not to seek Phagan's consent.

Det. Martin during his interview. On cross-examination, the prosecution asked Phagan if he believed there was a conspiracy against him and whether Ashley and the three officers were lying, a line of questioning which drew a mistrial motion from the defense. The trial court denied the motion but agreed to admonish the jury.[3] Three additional defense witnesses described Ashley as a dishonest person with a reputation for lying.

The jury convicted Phagan of one count of rape and one count of sodomy, both in the second degree, based on the occurrences in July 2016. He was acquitted of an additional count of rape in the second degree and a count of sodomy in the third degree. The jury fixed his punishment at ten years for each count to run consecutively for a total of twenty years' imprisonment. This appeal followed.

Phagan presents three allegations of error in seeking reversal. First, he contends the trial court erred in admitting the text messages from Ashley's phone into evidence without proper authentication. Next, he argues the trial court erred in denying his motion for a mistrial. Finally, he asserts palpable error occurred during closing argument when the prosecution discussed the confession he gave Det. Martin in the absence of a recording or written statement memorializing the interview.

First, Phagan asserts the trial court should not have admitted text messages to which he claimed he was not a party to and which he argued were

---

[3] The trial court gave a second admonition shortly following the first, after defense counsel voiced a concern the initial admonishment was confusing and requested a more specific statement from the court.

improperly authenticated. He contends Det. Martin did not sufficiently investigate the source of the number sending the messages to Ashley, nothing in those messages indicated who the sender actually was, and only Ashley stated they came from him.

Here, the Commonwealth sought to introduce a text message thread alleged to be between Phagan and Ashley. Commonwealth's Exhibit 1 is a photograph taken by Det. Martin of the contact information for "Mac" on Ashley's phone. Commonwealth's Exhibits 2 and 3 are photographs of the text messages in question. Ashley testified the photographs depicted the conversation between herself and Phagan from October 29, 2017, and she knew they were from him because she had previously received messages from him via the same phone number. She identified the contact information for "Mac" as belonging to Phagan. Det. Martin was permitted to read the messages to the jury and the photographs were admitted into evidence. For his part, Phagan disputed sending the messages. As below, he argues records from the telephone company were required to properly authenticate the text messages. We disagree.

Writings must be authenticated to be admissible but the Commonwealth's burden under Kentucky Rules of Evidence (KRE) 901 to authenticate a writing is "slight," requiring only a "*prima facie* showing." *Ordway v. Commonwealth*, 352 S.W.3d 584, 593 (Ky. 2011) (citing *Sanders v. Commonwealth*, 301 S.W.3d 497, 501 (Ky. 2010)). "Typically, the foundational authenticity of a writing can be laid simply by the testimony of someone

5

personally familiar with the writing or by the contents and characteristics of the writing itself." *Brafman v. Commonwealth*, 612 S.W.3d 850, 866 (Ky. 2020) (citing KRE 901(b)(1) and (4)). "Under KRE 901(b), the most common way to authenticate an item is through testimony of a witness that it is 'what it is claimed to be.'" *Kays v. Commonwealth*, 505 S.W.3d 260, 270 (Ky. App. 2016). "Exercising its considerable discretion, a trial court may admit a piece of evidence solely on the basis of testimony from a knowledgeable person that the item is what it purports to be and its condition has been substantially unchanged." *Id.* (citing *Grundy v. Commonwealth*, 25 S.W.3d 76, 80 (Ky. 2000). We review decisions regarding authentication of evidence for an abuse of discretion. *Brafman*, 612 S.W.3d at 866. An abuse of discretion occurs when a trial court's decision is "arbitrary, unreasonable, unfair, or unsupported by legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Absent such a showing, a trial court's determination will not be disturbed. *Matthews v. Commonwealth*, 163 S.W.3d 11, 19 (Ky. 2005).

As a party to the conversation, Ashley was knowledgeable of the contents of the contested text message thread and Phagan's contact information stored in her phone. Ashley stated Phagan had previously given her his phone number and she had stored it as "Mac" with a moneybag emoji beside the name. The photographs indicated "Mac" was the sender and Ashley was the recipient of the contested text messages, a time stamp appeared at the top of the thread, and the messages referred to similar sexual activity which was the subject of the charges being tried. Ashley's testimony regarding the text

6

message thread was sufficient for authentication purposes. *Kays,* 505 S.W.3d at 270. Further, Det. Martin confirmed the number shown in Commonwealth's Exhibit 1 for "Mac" was the same number Nunn—Phagan's girlfriend—used to contact Phagan. Unlike the situation presented in *Brafman,* the Commonwealth adduced more than just Ashley's bare assertion the messages came from Phagan and no reasonable assertion was presented that the messages had been fabricated or altered. As such, we discern no abuse of discretion by the trial court in admitting the photographs and contents of the text message thread.

Second, Phagan argues the trial court should have granted his motion for a mistrial based on the Commonwealth's questioning of him regarding the truthfulness of other witnesses. While the Commonwealth's questions were clearly out of bounds, *see Moss v. Commonwealth,* 949 S.W.2d 579, 583 (Ky. 1997) (improper to require a witness to characterize testimony of another witness as untrue), granting a mistrial for the Commonwealth's mistake is not automatic.

"Although a trial court is vested with discretion in granting a mistrial, the power to grant a mistrial ought to be used sparingly and only with the utmost caution, under urgent circumstances, and for very plain and obvious causes." *Commonwealth v. Scott,* 12 S.W.3d 682, 685 (Ky. 2000) (citation omitted).

> [A] mistrial is an extreme remedy and should be resorted to only when there is a *fundamental defect* in the proceedings and there is a '*manifest necessity* for such an action.' *Woodard* [*v. Commonwealth*], 147 S.W.3d [63,] 68 [(Ky. 2004)]. (emphasis added). The cause of the need for mistrial "must be of such character and magnitude that a litigant will be denied a fair and

7

impartial trial and the prejudicial effect can be removed in *no other way.*" *Id.* (emphasis added).

*Commonwealth v. Padgett,* 563 S.W.3d 639, 645 (Ky. 2018).

No manifest necessity for declaring a mistrial existed here. "[A] mistrial is acceptable *only* if there is an overwhelming probability that the jury will be unable to follow the court's admonition and a strong likelihood that the effect of the inadmissible evidence would be devastating[.]" *Id.* at 647-48 (quoting *Sneed v. Burress,* 500 S.W.3d 791, 805 (Ky. 2016) (Venters, J., dissenting)). A finding of manifest necessity is precluded when viable options exist. *Id.* (quoting *Cardine v. Commonwealth,* 283 S.W.3d 641, 650 (Ky. 2009)). One such option is a sufficient admonition to the jury, a tack taken by the trial court and assented to by Phagan. In fact, it was Phagan's counsel who helped craft the admonition.

A jury is presumed to follow instructions to disregard erroneously presented evidence. *Alexander v. Commonwealth,* 862 S.W.2d 856, 859 (Ky. 1993). This is true unless there is an overwhelming probability the jury will not follow the admonition and the proffered evidence is likely to be devastating to the defendant, or if the question was inflammatory or highly prejudicial. *Johnson v. Commonwealth,* 105 S.W.3d 430, 441 (Ky. 2003). None of these prerequisites exist in this case. Phagan completely denied Ashley's allegations and the majority of his defense centered on questioning her credibility. This theme began in the defense's opening statement and continued through to closing arguments. There is absolutely no indication the jury would be unable or unwilling to follow the trial court's directive and, based on Phagan's

8

continual attacks on Ashley's credibility, we cannot say the complained of question was inflammatory or prejudicial. Thus, the curative value of the admonition negated the need for declaring a mistrial.

Finally, Phagan argues the Commonwealth improperly discussed facts not in evidence during its summation. He concedes this argument is unpreserved and seeks palpable error review under Kentucky Rules of Criminal Procedure (RCr) 10.26. To be palpable, an error must affect the substantial rights of the defendant and a manifest injustice must have resulted from the error. *Id.* "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky. 2006).

Phagan takes issue with the Commonwealth's recitation and summary of his confession to Det. Martin. He contends because no recording or written statement memorializing the confession exists, there was no way for the jury to know what questions were asked or what details were given to Phagan before he made any incriminating admissions, which he continues to deny making. In his estimation, because there was no recording, it is impossible to determine whether and to what he actually confessed. Thus, he believes the Commonwealth's recitation and summation of the testimony was improper and constituted prosecutorial misconduct.

When presented with an allegation of prosecutorial misconduct, this Court must examine the matter in the context of the overall fairness of the trial. *Murphy v. Commonwealth,* 509 S.W.3d 34, 49 (Ky. 2017). To rise to the

9

level of reversible error, the misconduct must be "so serious as to render the entire trial fundamentally unfair." *Soto v. Commonwealth*, 139 S.W.3d 827, 873 (Ky. 2004) (citation omitted).

The challenged comments in the case at bar were fairly based on the evidence presented to the jury. Save a single reference to Nunn being asleep when the crimes occurred, a fact testified to by Ashley, the remainder of the Commonwealth's summary of Phagan's confession was based on the testimony presented by three officers based on their recollections of the interview and Det. Martin's contemporaneously generated report. Our review of the record reveals no undue prejudice occurred as a result of the comments during the Commonwealth's closing statement. It is axiomatic that counsel may draw all reasonable inferences from the evidence and comment thereon. *Padgett v. Commonwealth*, 312 S.W.3d 336, 350 (Ky. 2010). Whether Phagan had confessed was squarely before the jury based on Phagan's trial strategy. It cannot be said the jury's verdict was swayed by the Commonwealth's commentary and argument regarding the contents of the confession. The trial was not rendered unfair and thus, no error occurred, and certainly no palpable error.

For the foregoing reasons, the judgment of the McCracken Circuit Court is AFFIRMED.

All sitting. All concur.

10

COUNSEL FOR APPELLANT:

Emily Holt Rhorer
Kathleen Kallaher Schmidt
Assistant Public Advocates


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General