RENDERED: FEBRUARY 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1830-MR

WILLIAM ALLEN          APPELLANT

|  |  |
|---|---|
| v. | APPEAL FROM BOYD CIRCUIT COURT<br>HONORABLE GEORGE W. DAVIS, III, JUDGE<br>ACTION NO. 14-CI-00902 |

TIMOTHY M. WHEELER, M.D.          APPELLEE

AND          NO. 2019-CA-0023-MR

TIMOTHY WHEELER, M.D.; CLAY
A. EDWARDS; CHRISTOPHER J.
LEOPOLD; AND O'BRYAN BROWN
& TONER, PLLC          CROSS-APPELLANTS

|  |  |
|---|---|
| v. | CROSS-APPEAL FROM BOYD CIRCUIT COURT<br>HONORABLE GEORGE W. DAVIS, III, JUDGE<br>ACTION NO. 14-CI-00902 |

WILLIAM ALLEN          CROSS-APPELLEE

<u>OPINION</u>
<u>AFFIRMING IN PART, VACATING IN PART,</u>
<u>AND REMANDING</u>

\*\* \*\* \*\* \*\* \*\*

BEFORE:  CLAYTON, CHIEF JUDGE; K. THOMPSON AND L. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  William Allen appeals from a jury verdict awarding him zero dollars for pain in suffering despite finding Timothy Wheeler, M.D. was fifty percent at fault in Allen's medical malpractice case.  Dr. Wheeler and his counsel cross-appeal from the trial court's decision awarding Allen the costs he incurred for a previous trial which resulted in a mistrial after Wheeler's counsel asked Allen's wife about her having once been a plaintiff.  We affirm as to the jury's decision to award Allen no damages but vacate and remand the deficient costs order.

Dr. Wheeler performed hemorrhoid surgery on Allen on April 1, 2014.  Allen was discharged from the hospital later that day, but he returned that night because he was unable to urinate or defecate.  A catheter was inserted, which helped alleviate Allen's pain, and he was again sent home early on April 2.

Allen called Dr. Wheeler's office later that morning and spoke to a nurse, Katy Sebastian.  At trial, Allen testified he told Sebastian of his pain, inability to defecate, having a knot in his buttocks, and believing he had an infection.  Allen said he would have gladly gone to see Dr. Wheeler that day if

given the opportunity. Sebastian did not specifically recall speaking with Allen but testified that it is her practice to offer each patient calling with post-operative concerns the opportunity to be seen by Dr. Wheeler that same day and generally to instruct them to go to the emergency room if necessary.

It is uncontested that Allen neither saw Dr. Wheeler nor went to the emergency room on April 2. In addition, Allen did not seek medical attention on April 3. Allen indicated he did not do so because he believed from talking with Sebastian that his pain and discomfort were natural consequences of the surgery.

On April 4, Allen called Dr. Wheeler's office and was told to go to the emergency room or wait to be seen the following week as Dr. Wheeler was on vacation. About five hours later, Allen went to the emergency room, where he was diagnosed with an infection and abscess in his buttocks which necessitated surgery, including a colostomy. Later, Allen had surgery to reverse the colostomy and another surgery on his anus.

Allen sued Dr. Wheeler for medical malpractice in November 2014. Originally, Allen's wife, Barbara Allen, was a named plaintiff, raising loss of consortium claims. Protracted discovery ensued.

Eventually, the case was set for a trial to be held in October 2017. The court required Allen to submit an itemization of his damages by June 2017. However, the Allens submitted an itemization of damages which only stated "will

supplement" regarding incurred medical expenses. Consequently, Dr. Wheeler moved to strike the request for medical expenses. Unusually, the Allens agreed, and asked the trial court to dismiss their claim for medical damages. In fact, the Allens filed a motion *in limine* asking the trial court to prohibit testimony about Allen's medical expenses. The trial court granted the motion to strike the claim for medical expenses and the motion *in limine*.

Despite their earlier position, the Allens filed a motion asking the court to reconsider striking the claim for medical expenses because their counsel had recently learned her assistant had provided a medical expense summary to Dr. Wheeler's counsel over two months before the itemization deadline. Although it is difficult to discern with reliable precision, the apparent theory underlying the motion was that Dr. Wheeler thus already knew the rough amount of medical expenses the Allens claimed prior to the damage itemization deadline. The court summarily denied the motion to reconsider.

About three days before the October 2017 trial, Barbara Allen voluntarily dismissed her consortium claims, leaving William Allen as the only plaintiff.[1] Consequently, after opening statements at trial, the court agreed with Dr. Wheeler's counsel that it would be inappropriate for Barbara to be asked about the effects on her of William's illness or medical care. Nonetheless, on direct, cross

---

[1] Hereafter, unless otherwise indicated, references to "Allen" will be to William Allen.

and re-direct examinations, both sides asked Barbara questions about her relationship with William, such as whether they were still living together, whether there had been infidelity in their marriage, and what her hopes were for her future relationship with William. When Dr. Wheeler's counsel objected to the future relationship question, at a bench conference the court said the "door is wide open" since both parties had asked that type of question.

On re-cross-examination, Dr. Wheeler's counsel asked Barbara: "And in fairness, Mrs. Allen, you were a plaintiff in this case until last week, weren't you? And you dismissed your claim?" Before Barbara responded, Allen's counsel objected, and a bench conference ensued. At the bench, the court stated it was appalled at Dr. Wheeler's counsel and asked Allen's counsel what relief they requested. When counsel asked for time to consider the matter the court recessed for the day. The next morning, the court denied Allen's request to reinstate Barbara's consortium claims, and instead offered Allen two options: a "strong" admonition or a mistrial (which the court stated it believed was appropriate), with costs to be assessed on Dr. Wheeler's counsel. Allen moved for a mistrial and, over the objection of Dr. Wheeler, the court granted the motion. The court did not state that Dr. Wheeler's counsel was in contempt. In fact, the court stated Dr. Wheeler probably could have "got this in," presumably referring to notifying the jury of Barbara Allen's former consortium claims, at the end of the trial via

submitting the pleadings. The court scheduled a hearing for November 2017 to determine the amount of costs to be assessed and to set a new trial date.

In late October, Allen's counsel submitted roughly $30,000 in costs, the majority of which was a fee for an expert who was already en route when the mistrial was declared. In early November 2017, the trial court held a hearing on the costs, but it did not issue a ruling. The court set a new trial date but did not set a new discovery deadline, nor was it asked to do so.

In the interval between trials, Allen submitted a new witness list which contained three new, previously undisclosed names. Though the list was submitted many months prior to the scheduled retrial, the court struck the three newly listed names and precluded those witnesses from testifying. The court also again denied Allen's motion to reconsider its order dismissing his claim for medical expenses. Thus, when the second trial began in September 2018, Allen again was the only plaintiff and his only viable claim was for pain and suffering.

At the close of the multi-day trial, the jury returned a verdict finding Allen and Dr. Wheeler each fifty percent at fault for Allen's injuries but awarding him zero dollars for his pain and suffering. Dr. Wheeler's counsel orally asked the court in the alternative for a mistrial on all issues or for the court to instruct the jury that they needed to resume deliberations because their verdict is inconsistent with Kentucky law; Allen's counsel requested a mistrial and a new trial on

damages only, objecting to any directive requiring the jury to commence additional deliberations. The court eventually dismissed the jury and asked the parties to submit written briefs. After briefing, in November 2018, the court issued a one-page order which stated in relevant part that:

> However, odd [though] it may be, there exists a scenario wherein the jury, not believing the [entirety] of [Allen's] evidence, found [Dr. Wheeler's] negligence to be a substantial factor, but not necessarily the only factor in causation of [Allen's] damages. Thus, it is possible the Jury could have determined [Dr. Wheeler's] negligence was not the cause of damages related to [Allen's] pain and suffering.

> Allen then timely filed appeal 2018-CA-1830-MR on December 7, 2018.

Three days later, the trial court issued its extremely belated order granting plaintiff expenses related to October 2017 mistrial. Without explaining the roughly thirteen-month delay in its issuance, the order stated it was appropriate to award Allen a total of $29,967.46 in costs incurred for the proceeding which ended in a mistrial. Curiously, the order stated that the mistrial was caused by Dr. Wheeler's counsel "inadvertently raising an issue with a witness that had previously been prohibited by the Court and which could not be cured by an admonishment to the jury." *Id.* The order did not find Dr. Wheeler's counsel to be in contempt, nor did it cite *any* authority (precedent, Kentucky Rules of Civil Procedure (CR) or Kentucky Rules of Evidence (KRE)) as a basis for awarding

-7-

costs to Allen. In fact, though the court had orally stated that Dr. Wheeler's counsel—not Dr. Wheeler—would be responsible for paying Allen's trial costs, the order nonspecifically provided that Allen "shall be awarded the amount of $29,967.46 in costs related to the mistrial that Defense counsel caused in this civil action, as detailed above." *Id.* In other words, the order specified neither the legal grounds upon which it was based nor who had to pay Allen's costs. Dr. Wheeler and his counsel then filed cross-appeal 2019-CA-0023-MR. Because both appeals stem from the same circuit court case and operative facts, we will resolve both in this opinion.

We will address Allen's appeal first, beginning with the trial court's pretrial decisions (declining to reinstate Allen's medical expense claim and refusal to permit the newly disclosed witnesses from testifying at the second trial).

On February 8, 2017, the trial court signed an agreed order which, among other things, required the parties to "file witness lists, exhibit lists and itemization of damages by June 21, 2017." Record (R.) at 526. For whatever reason, Allen's itemization did not include specific damages for his medical expenses. As a result, Allen himself asked the court to dismiss his medical damages claim and additionally filed a motion *in limine* asking the court to prohibit Dr. Wheeler from mentioning medical damages at trial. Nonetheless, Allen

abruptly reversed course and contends the trial court erred by not also doing so. We disagree.

Allen, remarkably, is asserting error in the trial court taking the *exact* course of action he requested. Of course, those requested acts stem from Allen's inexplicable failure to comply with the deadlines contained in an *agreed* order. Allen cites nothing which causes us to find an abuse of discretion, or any error whatsoever, in the trial court's decision to enforce its pretrial disclosure deadlines. *See, e.g.*, *Bramblett v. Penske Truck Leasing Company, L.P.,* 598 S.W.3d 567, 573 (Ky.App. 2019) (holding that a trial court has "broad discretion in addressing a violation of its orders regarding discovery" and that we review its sanctions determinations for abuse of discretion); *Quattrocchi v. Nicholls*, 565 S.W.3d 622, 630 (Ky.App. 2018) ("It is well within a trial court's discretion to find that noncompliance with a scheduling order . . . justifies the exclusion of evidence.").

Even now, Allen has not explained why he did not timely submit his medical expense itemization. Allen has not shown any compelling reason why the trial should have revisited its decision to dismiss Allen's medical expense claim *at Allen's behest*. Allen cannot successfully argue that the trial court erred to his prejudice by giving him what he requested.

Similarly, we readily conclude the trial court did not err, or abuse its discretion, by declining to let Allen's belatedly disclosed witnesses testify at the second trial. Allen has not explained why he did not disclose the new witnesses before the mistrial. And Allen did not request discovery be reopened after the mistrial. Finally, Allen has failed to present any avowal testimony or otherwise show what the expected testimony of the excluded witnesses would have been and/or how their testimony would have been materially different than other witnesses who generally observed Allen's condition and its impact on his life. In short, Allen has failed to demonstrate any quantifiable prejudice or any authority mandating that he be permitted to let witnesses testify at a retrial when they were not disclosed prior to the first trial.

We now come to the heart of Allen's appeal—his contention that the zero-dollar verdict after the second trial cannot stand. After analyzing the parties' briefs, the record, and applicable law, we disagree.

We "acknowledge at the outset that an award of zero damages for pain and suffering is not *necessarily* inadequate as a matter of law." *Dennis v. Fulkerson*, 343 S.W.3d 633, 635 (Ky.App. 2011). Thus, the verdict is not inherently improper. Our task is to "review the record to determine whether a 'zero' award for damages was supported by the evidence *to any extent* so that we may determine whether the trial court was clearly erroneous in determining that a

new trial was not warranted." *Id.* (emphasis added). We review a trial court's decision to deny a motion for a new trial under CR 59.01 under the clearly erroneous standard. *Id.* at 634-35.

However, this case is unique in that Allen's failure to timely itemize his medical expenses meant the jury was only authorized to award pain and suffering damages. Thus, cases holding that a zero-dollar pain and suffering verdict is permissible if a jury awarded medical expenses are distinguishable. *See, e.g.*, *Miller v. Swift*, 42 S.W.3d 599, 601 (Ky. 2001) ("The law in Kentucky, however, does not require a jury to award damages for pain and suffering in every case in which it awards medical expenses."). The parties have not cited, nor have we independently located, a case where a jury was only asked to award damages for pain and suffering and chose to make no award despite finding a defendant partially at fault.

Each case obviously presents a distinguishable fact pattern, but we may synthesize a broad principle from precedent approving a "zero" pain and suffering verdict: there was evidence of other factors, besides the defendant's actions or inactions, which contributed to the plaintiff's injuries and/or pain. For example, though not intended to be an exhaustive list, Kentucky appellate courts have affirmed zero-dollar verdicts when: the plaintiff initially claimed to be uninjured and did not immediately seek medical treatment, *Bledsaw v. Dennis*, 197

-11-

S.W.3d 115, 117-18 (Ky.App. 2006); the young plaintiff's initial complaints of pain were contradicted by medical records; *Bayless v. Boyer*, 180 S.W.3d 439, 445–46 (Ky. 2005); and there was evidence from which a jury could have concluded the plaintiff had aggravated a pre-existing condition, *Miller*, 42 S.W.3d at 602-03; *Spalding v. Shinkle*, 774 S.W.2d 465, 466-67 (Ky.App. 1989). By contrast, we reversed a verdict with a "meager" pain and suffering award because it was "not supported by the evidence of record." *Hazelwood v. Beauchamp*, 766 S.W.2d 439, 440-41 (Ky.App. 1989).

We thus must examine the record to see if the jury's decision to award no pain and suffering damages to Allen was supported at all by the evidence. In so doing, we note that Allen's claims are primarily based upon Dr. Wheeler's post-operative care, or lack thereof, not the surgery itself.

Dr. Wheeler presented expert testimony from a surgeon who said he had never seen a post-operative infection develop within twenty-four hours of surgery, and that any infection thus would not have been detectible if Dr. Wheeler had seen Allen on April 2. According to Dr. Wheeler's expert, Allen's infection could not have been diagnosed before April 4, three days after his surgery. To be sure, Allen's expert contrarily testified that Allen's condition could have been diagnosed and treated on April 2 and so, by not evaluating Allen on that day, Dr. Wheeler permitted Allen's infection to become more severe, thereby causing Allen

to undergo additional painful and/or embarrassing medical procedures. However, Allen's expert also admitted on cross-examination that Allen's infection could have developed in the roughly fifty-hour interval between when Allen spoke to Sebastian on April 2 and when he called Dr. Wheeler's office on April 4.

In short, the jury had testimony from which it could have concluded that Dr. Wheeler's failure to see Allen on April 2 would not likely have prevented Allen from having additional pain and medical procedures. Moreover, though Sebastian did not specifically recall speaking with Allen, the jury could have believed that she offered to let Allen see Dr. Wheeler on April 2 but that Allen failed to accept that offer. The jury could also have believed that Allen's failure to seek medical care for roughly *fifty hours* after speaking with Sebastian on April 2 led to a worsening of his condition. Consequently, though it certainly could have reached a contrary conclusion, there was evidence to support the jury's verdict. Therefore, we must affirm. *Fulkerson*, 343 S.W.3d at 635.

Dr. Wheeler's appeal focuses on the propriety of the mistrial and the resultant costs order. We discern no abuse of discretion in the mistrial declaration but find the costs order to be fatally flawed.

Because granting a mistrial is a drastic act, it is reserved for situations where "there is a fundamental defect in the proceedings which will result in a manifest injustice" such that "a litigant will be denied a fair and impartial trial and

-13-

the prejudicial effect can be removed in no other way." *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky. 1996). Trial courts are vested with "broad discretion in determining whether a mistrial should be granted[,]" and consequently we may disturb that determination only if the trial court abused its discretion—i.e., the court acted "arbitrarily, unreasonably, unfairly, or in a way that is unsupported by sound legal principles." *Wright v. Commonwealth*, 590 S.W.3d 255, 260 (Ky. 2019).

Dr. Wheeler argues the trial court erred in granting a mistrial because "[t]he fact that Mrs. Allen was formerly a plaintiff was admissible." As we construe it, Dr. Wheeler's argument is that the jury was entitled to know of Barbara Allen's former status as a plaintiff in order to adjudge her credibility, citing *Miller ex rel. Monticello Banking Co. v. Marymount Medical Center*, 125 S.W.3d 274, 276 (Ky. 2004), for the proposition that "Kentucky courts have allowed evidence of a dismissed cross-claim to be introduced as evidence." But *Marymount Medical Center* is readily distinguishable as testimony about the previously settled claim was permissible there to show that expert witnesses had changed their testimony after hearing of the settlement. Indeed, our Supreme Court framed the issue as being whether Kentucky "allows admission of evidence of a settlement with one or more codefendants in order to impeach a witness whose testimony changed after learning of the settlement . . . ." *Id.* at 280. *See also*

-14-

*Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93, 119 (Ky. 2008) (citing

*Marymount Medical Center* for the rule that "evidence of a settlement agreement is

not admissible to prove liability or invalidity of the claim, but is admissible to

show the potential bias of parties who were previously adversaries in the litigation

and who may now be motivated to downplay each other's fault."). Barbara Allen

was not an expert witness, and Dr. Wheeler has not shown she—or anyone else—

materially changed her testimony after dismissing her consortium claims.

In short, we disagree with Dr. Wheeler's contention that asking

Barbara if she was recently a party to the case was proper.[2] Instead, we agree with

the trial court that the question was highly prejudicial to Allen as it insinuated that

Barbara had already received settlement funds from Dr. Wheeler. And the

agreement was not needed to show Barbara's already obvious bias in favor of

Allen, her spouse.[3] Instead, we agree with the trial court's apt observation that the

question raised a "big red flag to the jury—'I think they [the Allens] must have got

some money out of this.' That's the prejudice to the plaintiff. It sends the jury

---

[2] Because it is a purely hypothetical matter, we decline to address the correctness of the trial court's speculation that Dr. Wheeler could have properly introduced evidence of Barbara Allen's former status as a plaintiff by other methods.

[3] We need not delve into the details but some of the questions asked Barbara about her relationship with William were of highly dubious relevance, at best. However, we disagree with Dr. Wheeler's unfounded contention that asking Barbara about the ups and downs of her marriage somehow opened the door to ask her about her status as a former plaintiff. Asking a wife about the vicissitudes of her marriage does not directly relate to, or inherently intertwine with, whether she was once a party to the litigation.

back into the [deliberation] room thinking, 'Hey, they've already got some money out of this why should we even find in their favor?'"

Although the parties have not cited, nor have we independently located, precedent involving a similar question, "there is nevertheless authority supporting the proposition that a mistrial may be appropriate even when the error is based on a single improper question or statement posed by counsel." *Sneed v. Burress*, 500 S.W.3d 791, 796 (Ky. 2016). Given the impropriety of the question, we cannot conclude that the trial court's declaration of a mistrial was arbitrary, unreasonable or unfair. "Some trial judges may have handled the situation differently. But we cannot declare that the trial court here abused its discretion by granting [Allen's] motion for a mistrial[.]" *Id.*

Before we may address the propriety of the sanctions, we must resolve the antecedent question of whether the trial court had jurisdiction to assess costs since it did not do so until after Allen had filed his appeal. Dr. Wheeler asserts the trial court had lost jurisdiction to issue the order because it was issued after Allen filed his appeal. We disagree.

First, a court must satisfy jurisdictional concerns itself; for the same reasons parties may not confer jurisdiction by consent upon a court (*see, e.g.*, *Young v. Richardson*, 267 S.W.3d 690, 696 (Ky.App. 2008)), neither may they

-16-

deprive a court of jurisdiction by consent. Therefore, we must determine the trial court's jurisdiction for ourselves.

As the parties note, the general rule is that "[a] notice of appeal, when filed, transfers jurisdiction of the case from the circuit court to the appellate court. It places the named parties in the jurisdiction of the appellate court." *City of Devondale v. Stallings*, 795 S.W.2d 954, 957 (Ky. 1990). However, as with most general rules, there are exceptions.

For nearly ninety years, Kentucky precedent has permitted trial courts to address matters collateral to an ongoing appeal. Specifically, Kentucky's then-highest court held long ago that:

> an appeal does not necessarily deprive the lower court of all jurisdiction, so as to prevent absolutely any action, even though such action does not affect the matters involved on the appeal and exclusively committed to the reviewing court. On the contrary, the case is often regarded as pending in the court of original jurisdiction for the purposes of proceedings other than such as pertain to the subject-matter of the judgment itself, or to the appeal and the proper hearing thereof, and concerning collateral or incidental matters necessary for the preservation of the fruits of the ultimate judgment, or affecting the status in quo of the parties. Matters of the character indicated are not placed by an appeal from its judgment beyond the jurisdiction, protection, and control of the lower court.

*Garnett v. Oliver*, 242 Ky. 25, 45 S.W.2d 815, 816 (1931). *See also Wright v. Ecolab, Inc.*, 461 S.W.3d 753, 758 (Ky. 2015) (citing *Garnett* to recognize

-17-

"that there are circumstances in which a trial court may retain jurisdiction over some aspects of a case despite the filing of a notice of appeal."); 4 C.J.S. *Appeal and Error* § 517 (2020) ("During the pendency of an appellate proceeding, the trial court retains jurisdiction to proceed as to issues collateral to or not affecting the subject matter of the appeal, ancillary issues, and as to matters which are independent of and unrelated to that portion of the proceedings that pends on appeal . . . . Motions for sanctions are independent of the underlying decision from which the appeal is taken, and thus, the district court's consideration of this matter is permitted pursuant to retained jurisdiction, because such consideration does not implicate the decision appealed from.") (footnotes omitted).

That exception applies here because the sanctions have no bearing whatsoever on the issues presented in Allen's appeal. In other words, our resolution of the sanctions issue neither helps nor harms Allen's claims in his separate appeal. Similarly, we reject Dr. Wheeler's argument that the trial court lost the ability to issue sanctions once the judgment from which Allen appealed became final. *Bramblett*, 598 S.W.3d at 574-75 (holding that trial court had jurisdiction to issue post-judgment sanctions for discovery violations because the "post-judgment order was ancillary" and "in no manner modified or changed the judgment . . . .").

-18-

In sum, better practice would have been for the trial court to resolve the sanctions issue much sooner. Nonetheless, the court retained the jurisdiction to issue the sanctions order under these facts.

"We review the trial court's determination of appropriate sanctions, including fee awards, for an abuse of its discretion." *Id.* at 573. Here, the trial court abused its discretion by issuing a fatally flawed sanctions order.

First, the court failed to state the authority by which the sanctions were issued. Of course, courts have the inherent general authority to sanction contumacious acts. *Cabinet for Health and Family v. J.M.G.*, 475 S.W.3d 600, 611 (Ky. 2015). But, as Dr. Wheeler stresses, the trial court *never* found Dr. Wheeler's counsel to be in contempt. We cannot approve a court finding someone to be in contempt *sub silentio*, so the sanctions cannot be deemed to have been issued in response to contempt of court.

The already murky basis for the sanctions is muddied considerably further by the fact that the trial court curiously stated in the sanctions order that Dr. Wheeler's counsel "inadvertently rais[ed]" an improper issue. The trial court's conclusion that the question was inadvertent is perplexing. Counsel has not apologetically said he had an unintentional verbal slip; to the contrary, counsel continues to argue the question was permissible. And at the November 3, 2017,

sanctions hearing the trial court orally opined that counsel had "intentionally" placed the dismissal of Barbara's consortium claims before the jury.

The parties have not cited, nor have we independently located, Kentucky precedent resolving whether a court may properly find a person to be in inadvertent or unintentional civil contempt, an issue upon which courts across the country have split. *See* 17 Am. Jur. 2d *Contempt* § 15 (2020) ("While there is contrary authority, accidental and unintentional violations of a mandate of the court may be excused from a finding of civil contempt.") (footnote omitted). Indeed, we have stated that contempt is based upon "willful disobedience." *Kentucky Retirement Systems v. Foster*, 338 S.W.3d 788, 801 (Ky.App. 2010). Because we resolve actual controversies, not hypotheticals (even interesting ones), we decline to determine if a court may properly find someone to be in civil contempt for inadvertent misconduct because there is no indication that occurred here.

Courts may also issue a contempt finding for, *inter alia*, improper conduct in discovery under CR 37.02(2)(d), disobedience of a summons under CR 45.06, failure to comply with a restraining order or injunction under CR 65.06, or failure to perform a specific act mandated by a judgment. But Dr. Wheeler's counsel's question to Barbara does not fall within any of those recognized parameters.

The situation is rendered more complicated by the court's assertion in the sanctions order that Dr. Wheeler's counsel's question raised an issue which "had previously been prohibited by the Court . . . ." Similarly, immediately after the question at issue was asked, the trial court stated at a bench conference that counsel had agreed at the beginning of the case "that you would not bring that up," presumably referring to Barbara's dismissed consortium claims. But the parties have not cited to where any such agreement was reached. Similarly, the parties have not cited to any motion *in limine* filed by either Dr. Wheeler or Allen asking the court to prohibit discussion of Barbara's voluntarily dismissed consortium claims.

We are cognizant that early in the trial, outside the presence of the jury, the trial court told counsel it would be inappropriate to ask Barbara about how Allen's condition made her feel or her reaction thereto. But the parties have not cited, nor have we independently located, anywhere before or during the first trial where the trial court specifically prohibited counsel from mentioning Barbara's dismissed claims to the jury.

Of course, the trial courts of this Commonwealth, learned and dedicated though we know them to be, cannot preemptively address all problems and issues which may occur at trial. And trial courts may reasonably expect all members of the bar to comply with the Kentucky Rules of Civil Procedure and

Kentucky Rules of Evidence, and any egregious failure to do so may, depending on the circumstances, be sanctionable. But a sanctioned party is entitled to know why, specifically, the sanctions are being imposed.

Finally, the order here is impermissibly vague. When it declared a mistrial, the trial court orally stated that Clay Edwards, the attorney who asked Barbara about her status as a former plaintiff, would be responsible for paying the costs. But the written sanctions order only states that Allen "shall be awarded the amount of $29,967.46 in costs related to the mistrial that Defense counsel caused in this civil action, as detailed above." Because judges "often voice views and opinions which may be inconsistent with their final judgments" the rule in Kentucky is that "[w]hen there is a conflict between a court's oral statements and the written judgment, the written judgment controls." *Machniak v. Commonwealth*, 351 S.W.3d 648, 652 (Ky. 2011). Here, the order does not specify that Attorney Edwards—or anyone else—must pay Allen's costs. Consequently, we cannot discern whether the trial court changed its mind as to making Edwards pay Allen's costs or inadvertently failed to reaffirm its oral statement in the written order.

The order here does not specify: the type of sanctions (and the authority permitting those types of sanctions to be imposed); an accurate reason (or reasons) sanctions are being imposed; or the payor of the sanctions. Therefore, the

order cannot stand. Because the trial court had the jurisdiction to issue sanctions, we will vacate the sanctions order and remand to the trial court for further proceedings.

The trial court continues to have the discretion to determine whether the sanction of costs is appropriate for the causation of the mistrial. However, any award of costs should be provided with specificity and the only costs that should be awarded would be costs unequally attributable to the mistrial.

Because the matter is being remanded, we decline to address definitively whether each itemized cost in the sanctions order was proper as we do not opine on the correctness of a void decision. For the benefit of the parties and trial court on remand, however, we observe that, generally, the imposition of sanctions upon a party, or an attorney, for purely inadvertent misconduct would be highly questionable. Indeed, generally, "[o]ne whose offense amounts to no more than a misunderstanding or an 'honest mistake' is not guilty of a civil contempt." 17 Am. Jur. 2d *Contempt* § 15 (2020). In Kentucky, "[c]ontempt is the willful disobedience toward, or open disrespect for, the rules or orders of a court." *Gormley v. Judicial Conduct Commission*, 332 S.W.3d 717, 725 (Ky. 2010).

Thus, the trial court on remand must first state who is being sanctioned. Second, the court must resolve the disconnect between its oral remarks (when it stated the misconduct was intentional) and its written order (where it

stated the misconduct was unintentional). If the court concludes the misconduct was unintentional, it must explain in detail why sanctions are nonetheless appropriate, including the legal authority permitting it to impose sanctions for an accident (*i.e.*, unintentional misconduct).

If the court concludes the misconduct was intentional, it must then state whether the misconduct or action constitutes contempt. If it concludes the misconduct was intentional but not contumacious, it must state the legal authority by which it may impose sanctions. If the court finds the misconduct was intentional and contumacious, it must first explain *exactly* what court rule, order, or directive the misconduct violated, and whether the contempt is civil or criminal. As our Supreme Court explained in *Gormley*, both civil and criminal contempt are premised upon failing to comply with a court order or directive. 332 S.W.3d at 725-26 ("Civil contempt is when someone fails to follow a court order to do something . . . . Criminal contempt, on the other hand, is when a person disobeys a court order out of disrespect for the rules or orders of court.").

The sanctions must also be commensurate with the misconduct. If the contempt is designed to compensate Allen for costs incurred by having to undergo a second trial through no fault of his own, then the contempt would appear to be civil. *See Commonwealth, Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011) ("Contempt sanctions are classified as either criminal

or civil depending on whether they are meant to punish the contemner's noncompliance with the court's order and to vindicate the court's authority and dignity, or are meant to benefit an adverse party either by coercing compliance with the order or by compensating for losses the noncompliance occasioned."). Any sanctions must be strictly limited to expenses the misconduct caused Allen to incur, such as the cost of having experts and counsel travel back to Boyd County for the second trial (costs and expenses which would not have been incurred absent the mistrial occasioned by the misconduct). In short, if the trial court continues to believe sanctions are appropriate, it must issue a sufficiently detailed order satisfying the fundamental "who, what, why, and how" criteria necessary to any sanctions decision.

For the foregoing reasons, we: 1) affirm the judgment in William Allen's appeal, Case No. 2018-CA-1830-MR, and 2) vacate and remand for further proceedings consistent with this opinion the sanctions order from which Timothy Wheeler and his counsel appeal, Case No. 2019-CA-0023-MR.

ALL CONCUR.

-25-

BRIEFS FOR APPELLANT/
CROSS-APPELLEE:

Debra A. Nelson
Cincinnati, Ohio

Michael Andrew Barnett
Lexington, Kentucky

BRIEFS FOR APPELLEE/
CROSS-APPELLANT:

Clay A. Edwards
Christopher J. Leopold
Louisville, Kentucky

Thomas Scott Sennett
Ashland, Kentucky